UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PELEUS INSURANCE COMPANY,

                Plaintiff,

        v.

THE HALLET, LLC, VICTOR H. ERAZO ALCIVAR, and JORDY ERAZO,

                Defendants.[1]

**MEMORANDUM & ORDER**
24-CV-04630 (HG) (PK)

**HECTOR GONZALEZ**, United States District Judge:

In this insurance coverage dispute, Plaintiff Peleus Insurance Company seeks a declaration that it has no insuring obligations with respect to Defendant The Hallet. The Hallet asserts counterclaims, asking the Court to declare that Peleus has those insuring obligations. Peleus moves to dismiss those counterclaims as redundant. The Court agrees with Peleus and dismisses the counterclaims. Accordingly, it also denies The Hallet's related motion to strike Peleus's reply to the counterclaims.

## BACKGROUND

Peleus sued The Hallet and others seeking a declaration that it has no insuring obligations (including with respect to the duties to defend and to indemnify) in relation to two lawsuits filed against The Hallet in Queens County Supreme Court. *See* ECF No. 1 ¶ 1.[2] The underlying lawsuits in state court relate to two alleged accidents concerning construction projects in Queens. *Id.* ¶¶ 13, 19. The Hallet answered. *See* ECF No. 33. It also asserted counterclaims against

---

[1]     For the sake of readability, additional captions are omitted.

[2]     Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

Peleus, asking for a declaration that Peleus must insure it in the state court actions, and seeking costs and fees incurred in defending against this action. *See id.* at 16–20.

At the same time, The Hallet initiated a third-party action against Penn-Star Insurance Company, seeking a declaration that Penn-Star must insure it in the state court actions. *See id.* at 20–21. Penn-Star later answered The Hallet's third-party complaint and asserted a crossclaim against Peleus, asking "the Court [to] find that Peleus is not entitled to the relief it seeks." *See* ECF No. 51 at 52. Penn-Star later refiled this pleading to restyle its crossclaim as a counterclaim against Peleus. *See* ECF No. 53 at 33 n.1. Peleus answered both of Penn-Star's pleadings. *See* ECF Nos. 54, 55.

Peleus filed a "reply"[3] to The Hallet's counterclaims. *See* ECF No. 39. The Hallet responded with a pre-motion letter seeking to strike Peleus's reply for failure to comply with New York Insurance Law § 1213. *See* ECF No. 43. For context, New York law requires that "[b]efore any unauthorized foreign or alien insurer files any pleading in any proceeding against it," it must either make a deposit with the Court "in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding" or obtain a New York insurance license. N.Y. Ins. Law § 1213(c)(1)(A)–(B).[4] The Hallet also asked the Court to enforce New York's bond requirement or to permit it to "contest Peleus'[s] capacity to litigate before this Court prior to posting adequate security." ECF No. 43 at 1. Peleus filed an

---

[3]   The 2007 amendments to the Federal Rules eliminated the styling of a "reply to a counterclaim." *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1184 (4th ed., May 2025 update). That pleading is now referred to as an answer to a counterclaim, and the Court construes Peleus's pleading as such. *See* Fed. R. Civ. P. 7(a)(3).

[4]   Federal courts routinely enforce this bond requirement. *See, e.g.*, *Marsh & McLennan Cos. v. GIO Ins. Ltd.*, No. 11-cv-8391, 2013 WL 4007555, at *1 (S.D.N.Y. Aug. 6, 2013).

2

amended answer to The Hallet's counterclaims. *See* ECF No. 45. It also closed the loop of litigation among these three parties by filing crossclaims against Penn-Star. *See id.* at 14–19.

Peleus filed a letter opposing The Hallet's pre-motion letter concerning the bond requirement. *See* ECF No. 47. The Court set a briefing schedule concerning The Hallet's motion to strike. *See* Nov. 18, 2024, Text Order. Not to be outdone, Peleus then filed its own pre-motion letter in anticipation of a motion to strike The Hallet's counterclaims. *See* ECF No. 52. Therefore, the Court vacated the previously ordered briefing schedule and set a new one, directing the parties to brief their motions to strike on the same schedule. *See* Dec. 3, 2024, Text Order. Peleus filed its motion to dismiss The Hallet's counterclaims. *See* ECF No. 56 (Mot.); ECF No. 57 (Mem.); ECF No. 58 (Decl.). The Hallet filed its motion to strike Peleus's reply to its counterclaims and to post bond. *See* ECF No. 59 (Mot.); ECF No. 60 (Mem.); ECF No. 61 (Exs.); ECF No. 62 (Decl.).[5] Peleus later filed its opposition, *see* ECF No. 78, and The Hallet filed its own, *see* ECF No. 80 (Mem.); ECF No. 81 (Aff.).

Peleus separately filed another pre-motion letter in anticipation of a motion to strike Penn-Star's counterclaim. *See* ECF No. 71. Before Penn-Star could even respond, The Hallet jumped in, asking the Court to deny Peleus relief and to allow *it* to seek dismissal of Peleus's and Penn-Star's claims against each other. *See* ECF No. 72. Peleus retorted that such a request was improper. *See* ECF No. 75. Penn-Star also filed a response, principally expressing confusion about the nature of Peleus's motion. *See* ECF No. 76. Peleus opposed The Hallet's attempt to get involved in its dispute with Penn-Star. *See* ECF No. 79. In response to the Court's February

---

[5] The Hallet later filed a motion to amend exhibits. *See* ECF No. 63 (Mot.); ECF No. 64 (Revised Ex.). The Court directed the parties to refile their exhibits in compliance with its Individual Practices. *See* Jan. 10, 2025, Text Order. The parties did so. *See* ECF No. 65 (The Hallet's Exs.); ECF No. 66 (Peleus's Exs.).

10, 2025, Order, Penn-Star voluntarily dismissed its originally filed crossclaim against Peleus, *see* ECF No. 82. The Court dismissed it. *See* Feb. 13, 2025, Text Order. Penn-Star's counterclaim against Peleus remains live. *See* Feb. 10, 2025, Text Order.

Because The Hallet said it still wanted to pursue its motion to dismiss, *see* ECF No. 85, the Court set a briefing schedule. *See* Feb. 13, 2025, Text Order. In the meantime, Penn-Star filed amended answers. *See* ECF Nos. 93, 94. Ultimately, The Hallet chose not to file its motion to dismiss. *See* ECF No. 98.

## DISCUSSION

Despite the unnecessary avalanche of papers filed in this case,[6] the Court is tasked here with answering a straightforward question: should The Hallet's counterclaims against Peleus remain in this case? Although styled as a motion to strike, the proper vehicle for Peleus's motion would normally be a motion to dismiss under Rule 12(b)(6), as Peleus's own motion suggests. *See* ECF No. 57 at 16. However, because Peleus filed an answer, *see supra* note 3, the Court construes its untimely motion to dismiss as a motion for judgment on the pleadings brought under Rule 12(c), *see Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Analysis under Rule 12(c) is the same as under Rule 12(b)(6). *See Microbot Med., Inc. v. Mona*, No. 19-cv-3782, 2021 WL 1192110, at *2 (S.D.N.Y. Mar. 30, 2021) (noting the equivalency in the context of a Rule 12(c) motion to dismiss a counterclaim). The Court therefore briefly recites the relevant legal standards before applying them.

---

[6] The parties are directed to cease their scorched-earth approach to this standard coverage dispute before both this Court and Magistrate Judge Kuo. Their file-now-and-figure-it-out-later strategy is needlessly bloating the docket and wasting Court resources. *See* Fed. R. Civ. P. 1 (emphasizing the need for the "just, speedy, and inexpensive determination of every action").

4

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the Declaratory Judgment Act, a district court has "broad discretion" to decline to exercise jurisdiction over claims for declaratory relief.  *See Admiral Ins. Co. v. Niagara Transformer Co.*, 57 F.4th 85, 96 (2d Cir. 2023).  To the extent the following factors are relevant in a given case, a district court considers them in guiding its discretion:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy, and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Id.* at 99–100.  Based on the first factor, "[a] counterclaim seeking a declaratory judgment may be dismissed if it is duplicative of the counterclaimant['s] affirmative defenses, does not broaden the scope of the dispute, or would not present a live controversy once the plaintiff['s] claims have been resolved on the merits." *Nat'l Acad. of Tel. Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021).  Specifically, "courts will dismiss a declaratory judgment [claim] if it is the mirror image of a claim asserted in the complaint." *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 286 (E.D.N.Y. 2022).[7]  That is because "[t]he fact that a lawsuit has been filed that will necessarily settle the issues for which

---

[7] This legal framework and the below analysis are adapted from Judge Garaufis's instructive decision in *Josie Maran*.

5

the declaratory judgment is sought suggests that the declaratory judgment will serve no useful purpose." *Id.*

Here, Peleus correctly observes that The Hallet's counterclaims are mirror images of claims in its original complaint. *See* ECF No. 57 at 17–20. Specifically, the complaint seeks a declaration that Peleus "is not obligated to defend, indemnify or otherwise provide coverage to [The] Hallet" in either of the state court actions. *See* ECF No. 1 ¶¶ 40–71. In its counterclaims, The Hallet asks for a declaration that "Peleus must defend and indemnify [The] Hallet" in the state court actions. *See* ECF No. 33 at 16–18. Clearly, resolution of Peleus's claims "will necessarily settle" the identical issues raised in the counterclaims, *Josie Maran*, 624 F. Supp. 3d at 286, which do not "broaden the scope of the dispute," *Nat'l Acad.*, 551 F. Supp. 3d at 430.[8] Plus, the counterclaims are "duplicative" of The Hallet's first and second affirmative defenses, *see id.*, which assert that Peleus is not entitled to the declaration it seeks, *see* ECF No. 33 at 7. Notably, in its Opposition, The Hallet basically talks past this critical analysis and merely asserts that Peleus is not entitled to dismissal. *See* ECF No. 80 at 7. The closest The Hallet comes to substantive engagement is by asserting that its counterclaims are more detailed than Peleus's claims. *See* ECF No. 80 at 18–19. But that just highlights a different level of generality and fails

---

[8] As Peleus argues, the third counterclaim for fees and costs does not enlarge the action. *See* ECF No. 78 at 13. That counterclaim asserts a claim for relief pursuant to *Mighty Midgets, Inc. v. Centennial Insurance Co.*, 389 N.E.2d 1080 (N.Y. 1979). *See* ECF No. 33 at 18. *Mighty Midgets* carves out an exception to the American Rule, providing that an insured may recover fees where it "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." 389 N.E.2d at 1085. Because *Mighty Midgets* applies only when the insured is in a defensive posture, it is not appropriately brought as an affirmative counterclaim. *See U.S. Underwriters Ins. Co. v. Weatherization, Inc.*, 21 F. Supp. 2d 318, 328 (S.D.N.Y. 1998) (citing *Mighty Midgets* and explaining that "sums incurred in prosecuting claims against the insurer, such as through counterclaims[,] . . . are not recoverable"). The counterclaim adds nothing to the case because The Hallet maintains access to the *Mighty Midgets* exception merely by virtue of its defensive posture vis-à-vis Peleus.

6

to distinguish the ultimate relief sought from Peleus's. In other words, all arguments The Hallet has for why Peleus has coverage obligations would be litigated in Peleus's primary case.

The Hallet's remaining arguments in Opposition all miss the mark. First, it says that its counterclaims are permitted by Rule 13 and that their inclusion "was not inappropriate." *See* ECF No. 80 at 18–19. However, Peleus makes no argument for dismissal under Rule 13, and "appropriateness" is not the relevant legal test. Relatedly, The Hallet says that the counterclaims "contribute to the orderliness of the litigation, and Peleus cannot credibly claim prejudice" because of their inclusion. *Id.* at 19. But those points, too, rely on irrelevant principles. Second, and relatedly, The Hallet asserts that "[t]here is nothing unusual or inappropriate" about the counterclaims because they are "[p]roper" and "[t]ypical" in an insurance coverage action. *See id.* at 19–20. Indeed, it says, Peleus has asserted third-party claims in this case and counterclaims in other cases. *See id.* at 21–22. The mere fact that parties, including Peleus, plead claims that mirror the claims against them does not inform the Court about the viability of the counterclaims now before it. For example, the Court often reviews complaints asserting claims against non-suable entities. And yet the fact that those entities are sued in case after case does not change their legal status. Third, The Hallet critiques Peleus's authority, saying that it comes from other contexts like intellectual property. *See* ECF No. 80 at 22–23. That is not a principled argument. The Hallet fails to explain why the same framework used in IP cases like *Josie Maran* does not apply here. Indeed, courts frequently apply the mirror-image test in insurance cases. *See, e.g.*, *Allstate Ins. Co. v. Martinez*, No. 11-cv-574, 2012 WL 1379666, at *3–4 (D. Conn. Apr. 20, 2012). So, The Hallet then misconstrues that test, arguing that "[h]aving based its own claims on declaratory relief, Peleus obviously does not argue that declaratory relief will serve no useful purpose." ECF No. 80 at 23. But the relevant inquiry is

7

not whether declaratory relief writ large will serve a useful purpose; it is whether "a declaratory judgment counterclaim" serves that purpose. *Josie Maran*, 624 F. Supp. 3d at 287. Here, The Hallet's counterclaims do not.

There is one other issue to address. The parties go on at length about why The Hallet asserted its counterclaims. Peleus says that it harbored the improper purpose of forcing Peleus to file a responsive pleading, triggering New York's bond requirement. *See* ECF No. 57 at 20–21. For its part, The Hallet says that Peleus is the party with an improper purpose in seeking to avoid the bond requirement. *See* ECF No. 80 at 23–25. However, no one explains why any of this matters for the Rule 12 analysis. And it doesn't. *See Zappia v. Myovant Scis. Ltd.*, 708 F. Supp. 3d 486, 493 n.5 (S.D.N.Y. 2023) (explaining that "speculation about a plaintiff's motivation for bringing suit" is "irrelevant to the question [of] whether" the pleading states a claim).

The sole way in which the bond requirement remains potentially relevant concerns The Hallet's motion to strike Peleus's reply and require it to post bond. *See* ECF No. 59. Because the Court is striking The Hallet's counterclaims, this motion would appear to be moot. Appearing to recognize this, The Hallet takes a different tact, claiming that the "public policy objectives" behind Section 1213's bond requirement mandate its application even where the foreign insurer brings its claim as a plaintiff. *See* ECF No. 60 at 21–25. Specifically, The Hallet argues that to allow such an insurer to avoid the bond requirement by initiating litigation—rather than responding to it—would "create an incentive for foreign insurers to bring affirmative litigation against their insureds in New York." *Id.* at 23. The Court declines The Hallet's atextual invitation: the bond requirement applies only "[b]efore any unauthorized foreign or alien insurer files any pleading in any proceeding *against it*." N.Y. Ins. Law § 1213(c)(1) (emphasis added). The Hallet points to no case in which a court has imposed the bond

8

requirement to an insurer plaintiff in the way it suggests. And it would actually contravene New York law to rewrite the statute in this way. *See Anonymous v. Molik*, 109 N.E.3d 563, 568 (N.Y. 2018) ("Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning."). Accordingly, The Hallet's motion is denied, and the Court need not address Peleus's alternative arguments.

## CONCLUSION

For the foregoing reasons, Peleus's motion to dismiss, ECF No. 56, is granted, and The Hallet's motion to strike, ECF No. 59, is denied. This case remains referred to Magistrate Judge Kuo for all pretrial purposes.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
June 23, 2025

9